UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY[1] WILBURN et al.,

        Plaintiffs,

Case No. 2:23-cv-13170

v.

Honorable Susan K. DeClercq
United States District Judge

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES et al.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS (ECF Nos. 19; 23), DENYING AS MOOT PLAINTIFF'S
RENEWED MOTION FOR PRELIMINARY INJUNCTION (ECF No. 38),
AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S AMENDED
COMPLAINT (ECF No. 14)**

Federal law prohibits people convicted of a misdemeanor crime of domestic

violence from possessing firearms. 18 U.S.C. § 922(g)(9). But that prohibition does

not extend to someone whose conviction has been "expunged" or "set aside." *See* 18

U.S.C. § 921(a)(33)(B)(ii). In 2008, Jeramy Wilburn was convicted of a

misdemeanor crime of domestic violence, but that conviction was recently set aside

by a Michigan state court under Michigan law.

---

[1] The caption in Wilburn's amended complaint spells his first name "Jeremy," but
this Court confirmed at the motion hearing that the proper spelling is "Jeramy," and
so "Jeramy" will be used throughout the opinion.

After his conviction was set aside, Wilburn began acquiring firearms, believing himself to be once again eligible to do so. However, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) disagreed and confiscated Wilburn's firearms. So Wilburn sued ATF and its Director (collectively "ATF" or "the Government") for violations of his Second Amendment rights and moved for a preliminary injunction seeking the return of his firearms. The Government now moves to dismiss, arguing that Wilburn is still prohibited from possessing firearms because the relief he received under Michigan law did not fully "expunge" or "set aside" his conviction under federal law.

As explained below, the Government is correct, so its motion to dismiss will be granted, and Wilburn's motion for preliminary injunction will be denied as moot.

## I. BACKGROUND

### A. Federal Statutory and Regulatory Framework

The Gun Control Act of 1968 makes it unlawful for certain people to ship, transport, possess, or receive firearms or ammunition in interstate commerce. 18 U.S.C. § 922(g). One such category of prohibited people is anyone "who has been convicted in any court of a misdemeanor crime of domestic violence." *Id.* § 922(g)(9). However, a person is not considered to have been convicted of a misdemeanor crime of domestic violence under § 922(g)(9) "if the conviction has been *expunged* or *set aside*, or is an offense for which the person has been pardoned

or has had civil rights restored . . . unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Id.* § 921(a)(33)(B)(ii) (emphasis added).

To prevent transfers of firearms to prohibited persons, the Brady Handgun Violence Prevention Act requires federally licensed firearms dealers (federal firearms licensees, or FFLs)[2], to complete a criminal background check before selling a firearm to an unlicensed[3] person. 18 U.S.C. § 922(t)(1); Pub. L. No. 103-159, § 102(b), 107 Stat. 1536 (1993). Accordingly, an FFL may not transfer a firearm to an unlicensed person without first consulting the National Instant Criminal Background Check System (NICS). 18 U.S.C. § 922(t). The NICS is administered by the Federal Bureau of Investigation. 28 C.F.R. § 25.3.

When a person intends to purchase a firearm from an FFL, they must fill out an ATF Form 4473 with their personally identifying information and certify that they

---

[2] An FFL is "a person licensed by the ATF as a manufacturer, dealer, or importer of firearms." 28 C.F.R. § 25.2.

[3] Under the Brady Act, FFLs must use a federally maintained database—the National Instant Criminal Background Check System (NICS) database—to verify that a firearm transferee is not prohibited from possessing the firearm. *Gun Owners of Am., Inc. v. U.S. Dep't of Just.*, No. 21-1131, 2021 WL 5194078, at *1 (6th Cir. Nov. 9, 2021). Certain transferees, however, are exempt from this requirement, including those who possess a "qualifying state-issued permit"—sometimes called a "Brady alternate." *Id.* (quoting *Abramski v. United States*, 573 U.S. 169, 172 n.1 (2014)). Instead of submitting to a background check, these transferees may complete a firearm purchase by presenting the FFL with their qualifying permit, which is often a state-issued CPL.

- 3 -

are not prohibited by law from possessing firearms. ECF No. 22-2 at PageID.414.

The FFL provides the information from the Form 4473 to the NICS. *Id.* The NICS

searches relevant criminal history databases and returns one of three responses to the

FFL: "Proceed," "Delayed," or "Denied." 28 C.F.R. § 25.6(c)(1). When the NICS

cannot immediately determine whether an individual is prohibited from receiving a

firearm, the system provides the FFL with a "Delayed" response. *Id.*

§ 25.6(c)(1)(iv)(B). If the NICS provides a "Delayed" response, the FFL must wait

at least three business days for a follow-up response from the NICS before

transferring the firearm. *See* 18 U.S.C. § 922(t)(1)(B)(ii); 28 C.F.R.

§ 25.6(c)(1)(iv)(B). The NICS provides this date, known as the "Brady date," to the

FFL at the same time it provides a "Delayed" response. ECF No. 22-2 at PageID.415.

Even after the Brady date has passed, the NICS may continue to investigate if an

individual is prohibited. *Id.* When the NICS issues a "Deny" response after the Brady

date, NICS contacts the FFL to inquire if the FFL elected to transfer the firearm. *Id.*

If the FFL responds that the firearm was transferred, the NICS generates a referral

to ATF to initiate the retrieval of the firearm from the prohibited purchaser. *Id.*

As the agency responsible for enforcing criminal and regulatory violations of

the federal firearms laws, 28 U.S.C. § 599A(b)(1), ATF evaluates and refers the

NICS denials to the appropriate divisions for investigation and action, including

contacting the purchaser to retrieve the firearm or facilitate a transfer of the firearm, ECF No. 22-2 at PageID.415.

## B. Michigan's Set-Aside Procedure

Michigan law provides a procedure for setting aside certain types of convictions. A person may file an application with the court of conviction for entry of an order setting aside a conviction. Mich. Comp. Laws § 780.621. And beginning April 11, 2023, certain convictions are automatically set aside without an application. *Id.* § 780.621g(2); *see also* 2020 Mich. Pub. Acts 193.

Once a conviction is set aside, the applicant "is considered not to have been previously convicted," except as otherwise provided by statute. Mich. Comp. Laws § 780.622(1). For example, a conviction that has been set aside still qualifies as a conviction for purposes of Michigan's Sex Offenders Registration Act, *id.* § 780.622(3); may still be considered a prior conviction for purposes of charging a crime as a second or subsequent offense, *id.* § 780.622(9); and does not relieve the convicted person from the obligation to pay any court ordered restitution to the victim, *id.* § 780.622(7).

The statute also requires the state police to retain a nonpublic record of the conviction. *Id.* § 780.623(2). This record is available to various government agencies, including courts and law-enforcement agencies, for the following purposes:

(a) Consideration in a licensing function conducted by an agency of the judicial branch of state government.

(b) To show that a person who has filed an application to set aside a conviction has previously had a conviction set aside under this act.

(c) The court's consideration in determining the sentence to be imposed upon conviction for a subsequent offense that is punishable as a felony or by imprisonment for more than 1 year.

(d) Consideration by the governor if a person whose conviction has been set aside applies for a pardon for another offense.

(e) Consideration by the department of corrections or a law enforcement agency if a person whose conviction has been set aside applies for employment with the department of corrections or law enforcement agency.

(f) Consideration by a court, law enforcement agency, prosecuting attorney, or the attorney general in determining whether an individual required to be registered under the sex offenders registration act, 1994 PA 295, MCL 28.721 to 28.736, has violated that act, or for use in a prosecution for violating that act.

(g) Consideration by a court, law enforcement agency, prosecuting attorney, or the attorney general for use in making determinations regarding charging, plea offers, and sentencing, as applicable.

*Id.* § 780.623(2).

### C. Jeramy Wilburn

In April 2008, Wilburn was convicted of a misdemeanor crime of domestic violence. ECF No. 14 at PageID.253. That conviction barred him from, among other things, owning, possessing, or buying firearms. *Id.* In February 2022, a Michigan

state court set aside Wilburn's conviction under Mich. Comp. Laws § 780.621 *et seq.* *Id.*; *see also* ECF No. 2-1 at PageID.27.

In March 2022, Wilburn received a certificate from the FBI stating that he was eligible to buy a firearm.[4] ECF Nos. 14 at PageID.253; 14-1 at PageID.260. After that, he apparently purchased numerous firearms from FFLs without issue. ECF No. 14 at PageID.253. He was also "approved by the ATF to own a suppressor." *Id.*

In 2023, Wilburn once again attempted to buy a firearm from an FFL. ECF No. 22-2 at PageID.416. At first, NICS issued a "Delayed" response and provided a Brady date of August 11, 2023. *Id.* On August 11, 2023, the FFL sold the firearm to Wilburn. *Id.* Later that day, NICS changed the "Delayed" response to "Denied" based on Wilburn's 2008 conviction. *Id.* On November 2, 2023, ATF received a referral from NICS regarding Wilburn. *Id.* at PageID.415. ATF asserted that Wilburn was prohibited from possessing firearms under 18 U.S.C. § 922(g)(9) due to his 2008 conviction for a misdemeanor crime of domestic violence. *Id.* at PageID.416. Ultimately, Wilburn agreed to transfer seven firearms (including the one he had

---

[4] Wilburn's amended complaint does not include many details about this certificate or why it was issued. However, the Government represents that, in March 2022, the NICS reversed its determination that Wilburn was prohibited from possessing firearms based on a 2016 conviction for theft by false pretenses. *See* ECF No. 43 at PageID.1023–24. Because it relates to a different conviction, the Government maintains that the certificate has no bearing on this case. *Id.* at PageID.1024.

obtained on August 11, 2023) to his mother. *Id.* ATF facilitated the firearms transfer to Wilburn's mother on November 8, 2023. *Id.*

### D. Procedural Background

Seeking to challenge ATF's determination, Wilburn sued[5] the agency and its Director[6] in December 2023. ECF No. 1. Wilburn alleged that because his conviction was set aside under Michigan law, he was no longer prohibited from owning or possessing firearms under 18 U.S.C. § 922(g)(9). *Id.* The Government moved to dismiss, ECF No. 12, and Wilburn responded by amending his complaint, ECF No. 14.

The amended complaint brings three counts. Count I alleges that ATF violated Wilburn's rights under the Second Amendment to the United States Constitution. *Id.* at PageID.255–56. Counts II and III assert state-law causes of action for claim and delivery and for conversion, respectively. *Id.* at PageID.256–57. Wilburn alleges that

---

[5] Originally, another plaintiff, Todd Pollard, joined Wilburn in this suit, *see* ECF No. 1, and then the amended complaint added one more plaintiff, Cody Tarrian, *see* ECF No. 14. But on February 13, 2025, the parties stipulated to dismiss both Pollard's and Tarrian's claims without prejudice. ECF No. 52. This opinion and order thus focuses exclusively on Wilburn and his claims.

[6] At the time this case was filed, Steven M. Dettelbach was the Director of ATF. But as of February 2025, the Acting Director is Kash Patel. Under Civil Rule 25, the substitution of Patel for Dettelbach was automatic. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

ATF wrongfully took his firearms and seeks an order requiring ATF to return them and to pay a monetary award of three times the value of the firearms. *Id.* The Government once again filed a motion to dismiss, ECF Nos. 19; 23 (sealed), which was fully briefed, ECF Nos. 24; 29.

In July 2024, Wilburn also moved for a preliminary injunction[7] "requiring Defendants to honor his Second Amendment Rights" now that his conviction was set aside, so that he may "own, purchase, carry, or otherwise possess firearms." ECF No. 38 at PageID.867. The Government responded. ECF Nos. 38; 43 (sealed).

The Court held a hearing on the motions on February 11, 2025.

## II. THE MOTION TO DISMISS

The Government moves to dismiss all of Wilburn's claims. ECF Nos. 19; 23 (sealed). As to the Second Amendment claim (Count I), it argues that Wilburn is still prohibited from possessing firearms because the relief he received under Michigan law did not fully "expunge" or "set aside" his conviction under federal law. ECF No. 23 at PageID.441. As to the state-claw claims for claim and delivery and for conversion (Counts II and III), it argues that Wilburn has failed to identify a waiver

---

[7] Originally, Wilburn moved for a preliminary injunction at the same time he filed is complaint. *See* ECF Nos. 1; 2. This Court denied that request without prejudice and directed Wilburn to refile the motion on or before August 1, 2024, if he continued to seek such relief. ECF No. 37. Wilburn did so, filing a "renewed" motion for preliminary injunction on July 31, 2024. ECF No. 38.

of sovereign immunity, and that in any event, he did not comply with the requirements of the Federal Tort Claims Act (FTCA). *Id.* at PageID.448.

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). If not, then the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## A. Count I

Count I is titled "Violation of Plaintiffs' United States Constitutional Second Amendment Rights." ECF No. 14 at PageID.255. It is worth noting, however, that this claim is less sweeping than it may first appear. That is because Wilburn's amended complaint does not allege that § 922(g)(9) is unconstitutional on its face or

as applied to him,[8] nor does he argue this in his briefing. Indeed, at the February 2025 hearing, Wilburn's Counsel expressly confirmed that Wilburn was not launching a facial or as-applied challenge to § 922(g)(9).

Rather, Wilburn's claim is that because his conviction was "set aside" under Michigan law, it was also "set aside" for purposes of § 921(a)(33)(B)(ii), such that it no longer disqualifies him from possessing guns. ECF No. 14 at PageID.255. As the Government notes, such a claim is essentially a matter of statutory interpretation[9]—one that boils down to two questions: First, what is the definition of "expunge" or "set aside" under federal law? Second, does the relief Wilburn received under Michigan law meet that definition?

Turning to the first question, 18 U.S.C. § 921 does not define the terms "expunge" and "set aside." But the Government, pointing to dictionary definitions, argues that the plain meaning of those terms is clear. ECF No. 23 at PageID.443–45 (sealed). "Expunge" means "[t]o remove from a record, list, or book; to erase or destroy," *Expunge*, BLACK'S LAW DICTIONARY (12th ed. 2024), while "set aside" means "to annul or vacate (a judgment, order, etc.)," *Set Aside*, BLACK'S LAW

---

[8] Such challenges have arisen recently in other contexts like 18 U.S.C. § 922(g)(1), which bars people convicted of felonies from possessing firearms. *See United States v. Williams*, 113 F.4th 637, 662–63 (6th Cir. 2024) (holding that § 922(g)(1) is constitutional on its face and as applied to "dangerous" people).

[9] Although Wilburn challenges ATF's interpretation and application of the Gun Control Act, he did not style his claim as one under the Administrative Procedure Act. *See* ECF No. 14.

DICTIONARY (12th ed. 2024). The Government argues that these definitions require a state procedure to completely remove the effects of a conviction. ECF No. 23 at PageID.444.

Although the Sixth Circuit has not yet weighed in, the Tenth Circuit has already held as much. In *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236 (10th Cir. 2008), the court held that Congress intended the terms "expunged" and "set aside" in 18 U.S.C. § 921(a)(33)(B)(ii) "to be interpreted equivalently," and that the plain meaning of both terms "require[s] that the state procedure completely remove all effects of the conviction at issue." *Id.* at 1245.

For his part, Wilburn does not really challenge the Government's proposed interpretation of "expunged" and "set aside." Indeed, he appears to accept it—conceding in briefing (albeit related to another motion) that the meaning of both terms is "nearly equivalent," and that both "require a complete removal of the effects of a conviction." *See* ECF No. 2 at PageID.14–15 (citing *Wyoming ex rel. Crank*, 539 F.3d at 1245).

For this reason, and because the Tenth Circuit's reasoning in *Wyoming ex rel. Crank* is persuasive, this Court adopts the same definition of "expunged" and "set aside," construing both synonymously to require the state procedure to completely remove the effects of a conviction. *See* 539 F.3d at 1244–47.

Turning now to the second question, which forms the heart of the parties' disagreement: did Michigan's set-aside procedure completely remove all the effects of Wilburn's conviction?

It did not. Although Wilburn alleges that he is "no longer subject to any . . . effects of the conviction[]," ECF No. 14 at PageID.255, Michigan law expressly provides that a conviction may have various effects even after it is set aside. *See People v. Van Heck*, 651 N.W.2d 174, 178 (Mich. Ct. App. 2002) ("[A]n expungement under M.C.L. § 780.621 does not relive an individual of the legal disabilities flowing from the conviction."). For example, courts may consider a conviction that has been set aside when determining the sentence for a subsequent felony offense. Mich. Comp. Laws. § 780.623(2)(c). Such a conviction may also be considered "by a court, law enforcement agency, prosecuting attorney, or the attorney general for use in making determinations regarding charging, plea offers, and sentencing." *Id.* § 780.623(2)(g).

In this way, Michigan's set-aside procedure is like the one discussed in *Wyoming ex rel. Crank*, 539 F.3d at 1239–40. There, the Wyoming legislature established a procedure to expunge misdemeanor convictions for domestic violence. *Id.* at 1239. If a person met certain criteria, the state court could seal the records relating to the conviction. *Id.* at 1239–40. The statute provided, however, that such an expungement was only "for the purpose of restoring any firearm rights lost." *Id.*

at 1240 (quoting Wyo. Stat. Ann. § 7-13-1501(a)). It further stated that "[n]othing in this section shall be construed to affect the enhancement of penalties for second or subsequent convictions of misdemeanors under the laws of this state." *Id.* (quoting Wyo. Stat. Ann. § 7-13-1501(k)). The Tenth Circuit held that the Wyoming statute did not completely remove all of the effects of the plaintiff's conviction because, like the Michigan statute permits here, a person's conviction records remained available to law enforcement agencies for criminal enforcement purposes. *Id.* at 1249.

Michigan's set-aside procedure is also like the one considered by the Ninth Circuit in *Jennings v. Mukasey*, 511 F.3d 894 (9th Cir. 2007). There, the plaintiff received an order expunging a misdemeanor domestic violence conviction under Cal. Penal Code § 1203.4. *Jennings*, 511 F.3d at 897. But the court held that § 1203.4 did not fully eliminate the effects of the plaintiff's former conviction because, like the Michigan statute here, it allowed the expunged convictions to be considered in subsequent prosecutions—a "sweeping limitation" on the relief offered. *Id.* at 899 (quoting *People v. Frawley*, 98 Cal. Rptr. 2d 555, 560 (Cal. Ct. App. 2000)).

Wilburn attempts to distinguish *Wyoming ex rel. Crank*, arguing that "the Wyoming statute claimed to only restore firearm rights, while leaving the conviction intact." ECF No. 24 at PageID.462. He says that such a scheme is different than the Michigan statute, which clears someone's public criminal record. *Id.* at PageID.463;

- 14 -

ECF No. 24-2 at PageID.471 (citing statements from the "Michigan Courts" website that someone whose conviction is set aside "is considered to have not had a previous conviction."). This argument, however, fails to grapple with the dispositive fact in *Wyoming ex rel. Crank*—that the statute there limited the relief it granted by allowing the state to consider expunged convictions for criminal enforcement purposes. *See* 539 F.3d at 1246. That limit is why, according to the Tenth Circuit, the Wyoming statute failed to completely remove all effects of the earlier convictions. *Id.* And plainly, a similar limit exists in the Michigan statute, too. For this reason, Wilburn's argument on this point does not persuade.

Wilburn also attempts to analogize this case to *United States v. Laskie*, 258 F.3d 1047 (9th Cir. 2001). There, the plaintiff had pleaded guilty to a felony but later received an "honorable discharge" under Nevada law, which changed the previous finding of "Guilty" to "Not Guilty," dismissed the information, and released him "from all penalties and disabilities resulting from the crime of which he has been convicted." *Id.* at 1049. Given the "unequivocal" language in the discharge order, the court held that the discharged conviction could not count as a conviction for purposes of the state or federal felon-in-possession statutes. *Id.* at 1050–52. Otherwise, the plaintiff could reasonably have complained that he was "'mousetrapped'—that is, led to believe by the state that he was 'released from all penalties and disabilities resulting from the crime of which he has been convicted'

when, in fact, he was not entitled to possess firearms." *Id.* at 1052. Wilburn argues that he, too, can reasonably complain that he was "mousetrapped" into believing that he was released from all penalties and disabilities of his conviction when it was set aside. ECF No. 24 at PageID.464.

However, unlike in *Laskie*, Wilburn does not allege that he received a state-issued document purporting to release him from *all* such penalties and disabilities. Nor do any of the documents Wilburn received from ATF and the FBI purport to do so. *See* ECF Nos. 24-4 at PageID.480; 24-5 at PageID.482. True enough, once a conviction is set aside, the applicant "is considered not to have been previously convicted. . . ." Mich. Comp. Laws § 780.622(1). But again, that relief is subject to certain enumerated exceptions, including as related to subsequent prosecutions. *See id.* § 780.623. Those exceptions make clear that Wilburn was not released from *all* penalties and disabilities of his conviction, and that is why *Laskie's* "anti-mousetrapping" rule does not apply. *See Jennings*, 511 F.3d at 901 ("Indeed, [state law] specifically provide[s] that a conviction such as Jennings received may be used in any subsequent prosecution. . . . Because of this, Jennings was not 'mousetrapped' as was Laskie, and he cannot take advantage of *Laskie's* anti-mousetrapping rule.").

In sum, as a matter of statutory construction, the relief Wilburn received under Michigan's set-aside procedure did not expunge or set aside his conviction for

purposes of federal law. Accordingly, the motion to dismiss will be granted as to Count I.

### B. Counts II & III

In Counts II and III, Wilburn asserts causes of action for "claim and delivery" and conversion. ECF No. 14 at PageID.256–57. Claim and delivery is a civil action under Michigan Court Rule 3.105 to recover possession of property that has been unlawfully taken or detained. It was formerly known as replevin. *See Whitcraft v. Wolfe*, 384 N.W.2d 400, 402 n.1 (Mich. Ct. App. 1985) ("'Replevin' is now known as the action of claim and delivery."). Conversion is both a common-law tort and a statutory cause of action under Michigan law. *See Aroma Wines & Equip, Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 142–47 (Mich. 2015) (explaining the difference between a tort claim for conversion and statutory cause of action under Mich. Comp. Laws § 600.2919a(1)(a)).

As pleaded, these claims fail for several reasons. To start, Wilburn has not identified a waiver of sovereign immunity that permits him to bring these state-law claims against ATF and its Director in his official capacity. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (collecting cases); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for

jurisdiction."). This immunity extends to federal agencies and federal officers acting in their official capacities. *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013).

Plaintiffs bear the burden to establish a waiver of sovereign immunity, and their failure to do so means their claims must be dismissed on jurisdictional grounds. *See Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000). Here, Wilburn has not identified a waiver of sovereign immunity that would entitle him to bring a state cause of action for "claim and delivery" or conversion against the federal government.

Moreover, Counts II and III fail even if they are construed to raise claims under the Federal Tort Claims Act (FTCA). The FTCA provides the exclusive waiver of sovereign immunity for suits sounding in tort against the United States or its employees acting within the scope of employment. *See* 28 U.S.C. § 1346(b); 28 U.S.C. § 2679(b)(1). But this waiver is limited, and Congress has placed "several conditions" on it. *Ellison v. United States*, 531 F.3d 359, 361 (6th Cir. 2008). First, the United States is the only proper defendant in an FTCA action. *See* 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2679(a). For this reason, "a federal agency cannot be sued under the FTCA." *Chomic v. United States*, 377 F.3d 607, 608 (6th Cir. 2004); *see also Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) (noting that "[f]ailure to name the United States as defendant in an FTCA suit results in a fatal

- 18 -

lack of jurisdiction"). And a suit against the ATF Director in his official capacity is equivalent to a suit against the agency itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (noting that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Accordingly, the Court currently lacks subject matter jurisdiction over any FTCA claims against ATF or its Director.

In addition, a plaintiff cannot bring an action under the FTCA unless he has "first presented the claim to the appropriate Federal agency" and the agency has "finally denied" the claim. 28 U.S.C. § 2675(a). The purpose of this administrative-exhaustion requirement is to prevent plaintiffs from filing suit before attempting to settle their claims. *See Ellison*, 531 F.3d at 361 (observing that the FTCA requires plaintiffs to "give government agencies an initial opportunity to resolve claims"). Although the FTCA's exhaustion requirement is not jurisdictional, it "is still mandatory." *Kellom v. Quinn*, 86 F.4th 288, 293 (6th Cir. 2023).

Here, Wilburn does not allege that he presented an administrative tort claim to ATF. And the Government, through ATF's Associate Chief Counsel, represents that ATF has no record of any such claim being filed. *See* ECF No. 23-1 at PageID.455. Thus, Wilburn's state-law claims must fail because he has not exhausted his administrative remedies under the FTCA. *See Bray ex rel. N.B. v. Bon Secours Mercy Health, Inc.*, No. 1:20-cv-699, 2023 WL 2655603, at *5 (S.D. Ohio

Mar. 27, 2023), *aff'd*, 97 F.4th 403 (6th Cir. 2024) (dismissing FTCA claims under Civil Rule 12(b)(6) based on failure to exhaust).

For his part, Wilburn mostly sidesteps these arguments. He instead responds by attempting to morph these claims into a *Bivens* action. *See* ECF No. 24 at PageID.465–66. However, there is no *Bivens* remedy against a federal agency—only against federal officials in their *individual* capacities. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 486 (1994); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011). And even if Wilburn had sued the ATF Director in his individual (rather than official) capacity, *Bivens* liability does not extend to Second Amendment claims. *See, e.g.*, *Meeks v. Larsen*, 611 F. App'x 277, 285–87 (6th Cir. 2015) (declining to extend *Bivens* to Second Amendment claim arising from seizure of firearms).

Accordingly, Counts II and III must be dismissed, and so Wilburn's amended complaint will be dismissed in full.

### III. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Wilburn also filed a renewed motion for preliminary injunction "requiring Defendants to honor his Second Amendment Rights after expungement of [his] conviction, so that he may own, purchase, carry and otherwise possess firearms." ECF No. 38 at PageID.867. However, because the amended complaint will be

dismissed in full, Wilburn's motion for preliminary injunction is rendered moot and will thus be denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that:

Defendants' Motion to Dismiss, ECF Nos. 19; 23 (sealed), is **GRANTED**. Therefore, Plaintiff's Amended Complaint, ECF No. 14, is **DISMISSED WITH PREJUDICE**.

Further, Plaintiff's Renewed Motion for Preliminary Injunction, ECF No. 38, is **DENIED AS MOOT**.

**This is a final order and closes the above-captioned case**.

_/s/Susan K. DeClercq_
SUSAN K. DeCLERCQ
United States District Judge

Dated: March 13, 2025

- 21 -